UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RACHEL ZENO, Individually and on Behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>RP FIELD SERVICES, LLC and NATIONAL CREDITORS CONNECTION, INC.<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No.:<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Rachel Zeno, individually and on behalf of all others similarly situated, by and through her undersigned counsel, for her Collective Action Complaint against Defendants, alleges as follows:

### INTRODUCTION

1.  Plaintiff brings these claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et. seq.* against Defendants, RP Field Services, LLC ("RP") and National Creditors Connection, Inc. ("NCCI") for willfully misclassifying their joint Field Service Representative employees as "Independent Contractors" and failing to pay overtime compensation for all hours worked over 40 in each work week.

2. Plaintiff and all similarly situated employees who worked as Field Representatives performed non-exempt duties and are entitled to overtime pay, liquidated damages and attorney fees as allowed by the FLSA.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 as Plaintiff's claims are brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* and, more particularly, 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any federal or state court of competent jurisdiction."

4. Venue is proper in this District pursuant to 28 U.S.C. §1391 as the acts and omissions giving rise to the claims set forth herein occurred in this District.

## THE PARTIES

5. Plaintiff, Rachel Zeno ("Zeno"), is a major individual and a resident of the State of Texas.

6. Plaintiff, Zeno, has consented in writing to be a party to this FLSA action pursuant to 29 U.S.C. §216(b). Her Consent Form is attached hereto as Exhibit "A."

7. Plaintiff, Zeno, worked as a Field Representative for RP and NCCI from approximately July 17, 2015 through the date this Complaint was filed.

8. Defendant, RP Field Services, LLC, is a foreign limited liability company domiciled in the State of South Carolina but conducting business within the State of Texas and the jurisdiction of this Honorable Court. According to its website, RP Field Services, LLC ". . . is an exclusive regional vendor for National Creditors Connection,

2

Inc. . . ." and has ". . . been a contractor with NCCI since 2001 and RP Field Services established a regional vendor contract with NCCI in 2007." (www.rpfield.com/#companyprofile, visited 4/14/16)

9.  In National Creditors Connection, Inc. is a foreign corporation, domiciled in the State of California, but conducting business in the State of Texas and the jurisdiction of this Honorable Court. It may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX  78701. According to its website, NCCI is ". . . the nation's leader in field contact services since 1992." (www.nationalcreditors.com, visited 4/14/16)

## COVERAGE UNDER THE FLSA

10.  Defendants, NCCI and RP, each have annual gross volume of sales made or business done of $500,000 or greater in accordance with 29 U.S.C. §203(s)(1)(A)(ii).

11.  Plaintiff is an "employee" of Defendants within the meaning of the FLSA and was engaged in interstate commerce as defined by 29 U.S.C. §206(a) and §207(a)(1).

12.  Defendants, NCCI and RP, are covered employers as defined by 29 U.S.C. §203(d).

13.  Defendants, NCCI and RP, have employed two or more persons, including Plaintiff, and were "engaged in commerce or in the production of goods for commerce," or have had "employees handling, selling, or otherwise working on goods or materials that have been moved and/or produced for commerce by any person," as defined by 29 U.S.C. §203(s)(1)(A)(i).

14. Defendants, NCCI and RP's, employees, including Plaintiff and all Field Representatives, are subject to the provisions of 29 U.S.C. §206.

15. Plaintiff alleges that Defendants' uniform payroll practice deprives Plaintiff and those similarly situated Field Representatives overtime, in violation of the FLSA.

## FACTS

### I. The Work Performed By Plaintiff and Similarly Situated Field Representatives

16. Plaintiff is employed by NCCI and RP as a Field Representative. The job of a Field Representative is to make contact with a debtor, which Defendants refer to as "customers" who are in default or arrears in order to deliver collection material, to instigate a cell phone call between Defendants and the debtor, and to photograph the collateral that is the subject of the debt. As part of her employment, Plaintiff and all Field Representatives are governed by specific, written job duties imposed jointly by NCCI and RP.

17. The job duties of a Field Representative is to make a "Field Contact" with the customer (debtor) and do the following:

    a. Make actual contact with the customer;

    b. Verify and/or update customer and collateral/security property information;

    c. Deliver to the customer or leave at customer's home, as appropriate, a contact letter;

    d. Take photographs of the collateral and visited address;

      e.      Upon making contact with the customer, encourage customer to immediately contact lender/servicer and provide the use of cell phone if necessary to facilitate that call.

18. After such a field contact is made, the Field Representative is required to email a written report summarizing the results of the field contact which must include the customer's name and account identification, date, time, and location of the contact, and include digital photos of the collateral and the visited address.

19. The Field Representative is prohibited from making any representations to the customers, shall treat all customers in a fair, courteous and professional manner, and must not do anything to cause a breach of the peace, violation of law, or of the customer's rights or threaten the safety of any person.

20. Plaintiff and all similarly situated Field Representatives are provided with the customer contact information from Defendants and are paid based on the success of a customer contact. Pay is regulated by Defendants' description of services and fees. For example, a base fee paid to a Field Representative who successfully establishes contact with a customer is $25.00, whereas an attempt without success is $14.00.

21. Other payments range from $7.00 for delivering a letter to a customer up to $75.00 for actually performing a scripted interview with a customer.

22. Other fees are paid for driving by locations and taking photos from the car ($10.00) or visiting a merchant site to verify that the business is legitimate ($20.00).

23. The regulated and well defined job duties performed by all Field Representatives uniformly do not qualify for any exemption from the overtime requirements of the FLSA. These job duties constitute non-exempt employment.

24. Plaintiff and all similarly situated employees routinely work in excess of 40 hours per work week and do not receive overtime compensation, in violation of the FLSA.

## II. Plaintiff and All Similarly Situated Field Representatives Are Misclassified As Independent Contractors

25. Plaintiff and all similarly situated Field Representatives who work for Defendants are uniformly misclassified as independent contractors when, in fact, they are employees. Defendants require Plaintiff and all similarly situated Field Representatives to sign illegal and void "Field Contract Services Agreements" which purport to describe the legal relationship between Plaintiff and Defendants as an independent contractor.

26. Plaintiff executed her Field Contract Services Agreement ("Agreement") on July 17, 2015.

27. Although contradicted by the written rules, policies, procedures and requirements with which Plaintiff and all Field Representatives must comply, the Agreement claims that Field Representatives are independent contractors and, in an effort to quell any effort by any Field Representative to dispute this classification, illegally states that the Field Representative ". . . hereby agrees to indemnify and hold RP Field Services, LLC and/or NCCI from any and all costs, damages, including attorney fees, in

the event contractor [Field Representative] directly or indirectly pursues a claim of being an employee of RP Field Services, LLC and/or NCCI."

28. This provision in the Field Contract Services Agreement is against public policy, illegal, void, unenforceable and unconscionable and is designed to prevent employees such as Plaintiff from exercising their rights under the FLSA. Any such action by Defendants would constitute retaliation, which is prohibited by 29 U.S.C. §215(a)(3).

29. Plaintiff and all similarly situated Field Representatives were provided little or no discretion or independent judgment in the method and manner that their work was performed. Instead, all aspects of the Field Representatives' job duties were controlled by Defendants' policies and procedures.

30. Defendants regulated the Field Representatives' attire by implementing a mandatory dress code policy. This policy required the Field Representatives to adhere to professional standards of dress and appearance that are compatible with the professional appearance of NCCI and its clients. Plaintiff and all similarly situated Field Representatives were prohibited from wearing clothing which was soiled, torn, see through, profane, offensive or obscene. Further, the dress code policy prohibited exposed undergarments, sagging pants, excessively short garments, bare midriff, t-shirts or tank tops, shorts, athletic shoes, sandals, symbols, styles or attire associated with intimidation or violent groups.

31. Defendants required Plaintiff and all similarly situated Field Representatives to wear and display an NCCI photo identification badge which must be hanging on a lanyard around the neck.

32. NCCI and RP conduct a seven year national criminal background check on every Field Representative in order to determine if the Field Representative qualifies for the job position.

33. NCCI provides $5,000,000.00 in liability and errors and omissions insurance coverage under a master policy that covers all Field Representatives.

34. Field Representatives are covered by NCCI state licenses in those states that require licensing to operate as a Field Representative.

35. Plaintiff and all similarly situated Field Representatives were required to comply with Defendants' Procedures Manual which is 36 pages in length. The Procedures Manual thoroughly regulates all aspects of the Field Representative's daily activities in minute and excruciating detail.

36. The Procedures Manual provides step-by-step instructions for the Field Representative to prepare for a call. These steps include logging in and checking the manifest, review the field contract request form, confirm the address and debt type, as well as collateral.

37. Instructions are provided on how to find an address if there is difficulty.

38. The Procedures Manual regulates all aspects of field work by prescribing the manner in which the Field Representatives are to act and what they are to say.

39. For example, the Procedures Manual states that if the employee arrives ". . . at a gated community with a guard, simply tell them you have a delivery for the person at the specific address. This is the same for business addresses that have the receptionist or security station."

40. The Procedures Manual regulates the sequence of performing the Field Representative's job duties. For example, the Field Representative is required to take pictures of the home or office as soon as they pull up at a debtor's location.

41. The Field Representative is required to follow a script when arriving at the location of a debtor. For example, the Field Representative is required to state "Hi! I have a delivery for John Smith. Is he here?" The Field Representative is also told what to say in response. These instructions include what to do if the debtor is not home.

42. After a field call, the Procedures Manual sets forth the precise procedures for saving paperwork which includes how the paperwork is to be stored and uploaded.

43. The Procedures Manual regulates the number of photographs of collateral that must be taken and how the Field Representative is to react if the debtor refuses permission to photograph. Finally, even the resolution of the photographs is regulated by the Procedures Manual.

44. The Procedures Manual directs the Field Representative on the content and manner of completing and producing reports and provides a complete set of data entry terms and conditions that must be complied with.

45. The Procedures Manual addresses what the Field Representative must do in the event that the address provided by Defendants is not valid and requires the Field Representative to take certain steps on his or her software system to find a good address.

46. The Procedures Manual contains numerous miscellaneous sections that regulate the form and content of telephone calls, compliance with no trespassing signs, and even discussions with non-debtor third parties.

47. At all relevant times, these policies and procedures are applied uniformly to all Field Representatives, each of whom was forced to comply with each of these requirements.

48. The determining factor as to whether Plaintiff and those similarly situated Field Representatives are employees or independent contractors under the FLSA cannot be regulated by any contract or by the Agreement. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic realty test. See, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic realty, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

49. Under the applicable test, courts utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c.    The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d.    The skill and initiative required in performing the job;

    e.    The permanency of the relationship; and

    f.    The degree to which the alleged employee's tasks are integral to the employer's business.

Based on the above facts, and applying the economic realty test, Plaintiff and those similarly situated Field Representatives have established economic dependence on the Defendants are employees and not independent contractors.

50.    Plaintiff and all similarly situated Field Representatives are not in business for themselves and truly independent, but rather are economically dependent upon employment with Defendants.

51.    Plaintiff and all similarly situated Field Representatives are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Field Representatives are the basis for Defendants' business and thus constitute an integral part thereof.

52.    Defendants obtained the debtors that are assigned to the Field Representatives which are parsed out based on Defendants' allocation process.

53.    Defendants retained complete and total control over the activities of the Field Representatives and regulate all aspects of the job.

54.    Plaintiff and all similarly situated Field Representatives' economic status is inextricably linked to conditions over which Defendants have complete control,

including, without limitation, the method by which their work is performed, the locations where they must go, the field calls they can make, the amount they are to be paid, and the manner by which they perform their work.

55. Plaintiff and all similarly situated Field Representatives are not required to have any specialized or unique skills to perform their job. In fact, the job duties are manual labor and do not incorporate any particular skill, judgment or expertise, but instead, simply require the Field Representative to read from the Defendants' script and follow its procedures which outline all aspects of the Field Representative job.

56. Plaintiff and all similarly situated Field Representatives have no control over the debtors whom they seek to contact, nor do they participate in any efforts to increase Defendants' customer base.

57. Plaintiff and all similarly situated Field Representatives' financial investment is minor when compared to the investment made by Defendants in the business at hand. All capital investment and risk belongs to Defendants.

58. Plaintiff and all similarly situated Field Representatives' investment is limited to fuel and time spent performing their job as Field Representatives. Absent Defendants' investment in provision of the business activities that Field Representatives perform, no money would be earned.

59. Plaintiff has worked for Defendants in excess of ten months. On information and belief, other similarly situated employees have worked for Defendants for an equal or greater period of time. Thus, the Field Representative job is more or less permanent.

60. The job of a Field Representative is an integral part of Defendants' business and critical to Defendants' success. Without Field Representatives, Defendants would not be able to hold themselves out as the leaders in field service contact industry.

61. Accordingly, Plaintiff and all similarly situated Field Representatives are economically dependent on Defendants and are thus employees and not independent contractors.

## JOINT EMPLOYER ALLEGATIONS

62. At all times pertinent hereto, Defendants jointly exercised supervisory responsibilities and substantial control over the terms and conditions of Plaintiff and all similarly situated Field Representatives' work including, but not limited to, assigning work and compliance with express written procedures that regulate all aspects of the Field Representative job.

63. Defendant, RP, at all times, was the agent of Defendant, NCCI, and acted as an exclusive contractor with NCCI for purposes of hiring Field Representatives, all of whom were required to comply with NCCI and RP's policies and procedures which were identical and mutually adopted by both Defendants.

64. The Procedures Manual was written by Defendant, NCCI, and serves as a conduit by which NCCI and RP jointly controlled the work conditions and activities of all Field Representatives.

65. The manner by which Plaintiff and all similarly situated employees were paid was designed, implemented and enforced by both Defendants.

66. Both Defendants had the ability to terminate Plaintiff and all similarly situated Field Representatives' employment.

67. Defendant, NCCI, acting through Defendant, RP, and other entities like RP, employs Field Representatives throughout the United States of America under the same terms and conditions as set forth hereinabove.

68. Accordingly, Defendants, NCCI and RP, are "employers" under the FLSA and, as such, are jointly and severally liable for all FLSA damages for their joint failure to comply with the FLSA's overtime requirements regarding Field Representatives.

## COLLECTIVE ACTION ALLEGATIONS

69. Plaintiff has actual knowledge that similarly situated Field Representatives are subject to the same payroll policies, practices, and procedures and have been denied overtime pay for hours worked over 40 hours per work week as a result of Defendants' misclassification of its Field Representatives as independent contractors.

70. Field Representatives are employed by Defendant, NCCI, and/or Defendant, RP, and/or other agents of NCCI throughout the United States but are not paid overtime at the rate of one and one-half time their regular rate of pay when those hours exceed 40 hours per work week.

71. Defendants have classified and continue to classify the Field Representative job position as independent contractors.

72. All Field Representatives perform and have performed the same or similar work as Plaintiff and were misclassified as independent contractors by Defendants.

73. Plaintiff and all similarly situated Field Representatives employed by Defendants are not exempt from the overtime provisions of the FLSA and are entitled to overtime pay.

74. All Field Representatives performed the same job duties as Plaintiff and are all subject to the same pay policy, procedure and structure, and are all denied overtime.

75. Any differences in precise job duties of Field Representatives do not prevent collective treatment.

76. Although the exact amount of damages may very among all misclassified Field Representatives, the damages for each can be easily calculated utilizing Defendants' records and applying a simple formula.

77. As such, Plaintiff seeks to represent the following class of similarly situated employees of Defendants pursuant to 29 U.S.C. §216(b):

> All Field Representatives who performed services for NCCI and were classified as independent contractors at any time in the past three (3) years, including those who performed work for National Creditors Connection, Inc.'s vendors including RP Field Services, LLC.

## DAMAGES SOUGHT PURSUANT TO THE FLSA

78. At all times relevant, Plaintiff and all similarly situated Field Representatives, have been and continue to be entitled to the rights, protections and benefits provided under the FLSA, 29 U.S.C. §201, *et. seq.*

79. Defendants violated the FLSA by failing to pay all overtime wages due to Plaintiff and all similarly situated Field Representatives. Accordingly, these employees

are entitled to unpaid overtime at one and one-half times said employee's regular rate of pay for each hour over 40 worked for each work week within the preceding three years.

80. On information and belief, there may be work weeks in which Plaintiff and all similarly situated Field Representatives were not paid the prevailing minimum wage. Thus, these employees are entitled to damages equal to the mandated minimum wage within the three years preceding the filing of this Complaint for all work weeks in which minimum wages were not paid.

81. Plaintiff and all similarly situated Field Representatives are entitled to an amount equal to all of their unpaid wages as liquidated damages for Defendants' knowing and willful violation of the FLSA, as well as attorney fees and costs, pursuant to 29 U.S.C. §255.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. Certifying this case as a collective action in accordance with 29 U.S.C. §216(b);

B. Authorizing prompt notice, pursuant to 29 U.S.C. §216(b), of this litigation to be sent to all potential class member;

C. Declaring that Defendants willfully violated the FLSA and committed a knowing violation;

D. Awarding Plaintiff and the collective action members all damages allowable under the FLSA including, but not limited to, minimum wage, unpaid overtime, and liquidated damages;

E. Granting judgment in favor of Plaintiff and the collective action members and against Defendants, and awarding lost overtime compensation calculated at the rate of one and one-half times each employee's regular rate of pay multiplied by all hours worked in excess of 40 hours per work week for the past three years;

F. Awarding reasonable attorney fees and costs incurred in prosecuting this action;

G. Awarding pre and post-judgment interest on all amounts awarded herein; and

H. Awarding general and equitable relief as appropriate.

Dated: April 27, 2016                   Respectfully submitted:

/s/ Philip Bohrer
Philip Bohrer
Texas Bar No.: 00792194
Scott E. Brady
LA Bar No.: 24976
BOHRER BRADY, LLC
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000
phil@bohrerbrady.com
scott@bohrerbrady.com

-and-

FIBICH, LEEBRON, COPELAND,
 BRIGGS & JOSEPHSON
Michael A. Josephson
State Bar No.: 24014780
mjosephson@fibichlaw.com
Lindsay R. Itkin
State Bar No.: 24068647
litkin@fibichlaw.com
Andrew W. Dunlap
State Bar No.: 24078444
adunlap@fibichlaw.com
1150 Bissonet
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030